HILL, McLEAN & Co. *v.* JOHN C. SIMPSON.

PREHN, CLEGG & Co et al., HAMILTON, McKINDER & Co. et al.
and EDWARD DAVENNE et al.—*Intervenors.*

| 8 | 45 |
|---|---|
| 50 | 356 |
| 8 | 45 |
| 52 | 269 |
| 8 | 45 |
| 112 | 714 |

Plaintiff sold to *Simpson* cotton for cash on delivery. It was delivered on the 4th of June, and the plaintiffs, by their delivery of the cotton, gave the purchaser the ownership of it, and he appeared as such, and got credit on his purchase accordingly in the market, without any notice, or interference on the part of plaintiffs on account of their unpaid balance, until the 9th following. The plaintiffs had no privilege on that day which could conflict with the rights of intervenors. By their incautious delivery the plaintiffs enabled *Simpson* to do that for which cotton is bought in this market—to get credit and speculate upon it.

Whenever the owner has parted with his control over the goods, and cannot change their destination, his creditors cannot attach ; but, whenever the owner can sell and deliver, the creditor may seize.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Semmes*, for plaintiffs and appellants. *Clarke*, for *Prehn & Co.*, Intervenors. *E. A. Bradford*, for *McKinder* et al., and *Davenne* et al.

EUSTIS, C. J. This appeal is taken by the plaintiffs from a judgment rendered by the Fourth District Court of New Orleans against them, and in favor of certain intervening parties, who are the appellees in this Court.

The suits present a contest between the plaintiffs as attaching creditors and as vendors, and the intervenors, as commission merchants, claiming the right to hold a large quantity of cotton upon which they have made advances.

On the 3d of June, 1851, *Hill, McLean & Co.*, of New Orleans, sold to *John Simpson*, 819 bales of cotton for the price of $30,585 72 cash, payable on delivery. The cotton was stored in the Orleans cotton press, but was not delivered to *Simpson* until the 4th of June. On the day of the sale the plaintiffs received from *Simpson* $20,000 on account, and on the 7th he gave them his check on *Robb & Co.*, bankers, for the balance, $10,585 72, which was protested for non payment. For the receiving of this sum, and to enforce their privilege as vendors, the plaintiffs brought the present suit on the 9th of June. *Simpson* had absconded ; the plaintiffs caused to be issued a writ of sequestration and writs of attachment against his property. The Sheriff seized the 819 bales of cotton un-

der the writ of sequestration, and the writ of attachment was executed by process of garnishment against the intervening parties. On the 21st of June a confession of judgment was entered by *Simpson* in favor of the plaintiffs for the balance claimed, with privilege as vendors and as attaching creditors. Previous to this the appellees had intervened, and claimed, each for his interest, the cotton sequestered.

The District Judge was of opinion that the case could not be distinguished in principle from that of *Galbraith* v. *Lee*, reported in 6th Annual Reports, 343, and as the property was, at the time of the service of the writ, no longer in the possession of the buyer, he decided in favor of the intervenors, and against the vendor's privilege. He does not appear to have considered the attachments as creating any impediment to the exercise of the parties' claim for the cotton on account of their advances. The effect of these writs has been urged in argument in this Court. It will be considered after the examination of the plaintiffs' claim to a privilege as vendors.

A very carefully prepared printed argument has been submitted by the counsel for the plaintiffs, and we will consider the subject in the order in which he has placed his views before us.

It is urged that, in order to maintain the judgment of the District Court, the intervenors must establish two propositions:

1st. That, at the time of the seizure by the Sheriff, they had made specific advances to *Simpson* on the cotton seized. 2d, that at the time of the seizure, they had possession of the cotton, or that it was under their control.

If the advances were not specific, the Act of 1841, it is said, creates no privilege for the advances, and if, at the time of the seizure, they had parted with the possession of the property, or had lost, or forfeited their right to it, the judgment restoring the possession to them is erroneous.

The parties to these transactions being in perfect good faith, and there being nothing in them at all at variance with the usual course of business, either as to time, place, or circumstance, under the decisions of this court, there is another question which stands before that of specific advances made by the counsel, and that is, whether at the time of the seizure of the cotton, the vendors had a privilege on it. The sale was made for cash on delivery; it was delivered on the 4th of June, and the plaintiffs, by their delivery of the cotton, gave the purchaser the ownership of it, and he appeared as such, and got credit on his purchase, accordingly, in the market, without any notice or interference on the part of the plaintiffs on account of their unpaid balance until the 9th following. The plaintiffs had no privilege on that day which could conflict with the rights of the intervenors. By their incautious delivery, the plaintiffs enable *Simpson* to do that for which cotton is bought in this market—to get credit and speculate upon it. *Fetter* v. *Field*, 1 Annual Reports, 83. *Galbraith* v. *Lee*, 5 Annual Reports, 349.

Having, therefore, come to the conclusion that the plaintiffs had no privilege on the cotton at the time of the seizure, no further enquiry is pertinent on that part of the case, and it remains to examine the rights of the plaintiffs under their attachments. The cotton was not seized under the writs of attachment, but, it is contended that the garnishment of the intervenors embraces it, and renders them responsible for it to the plaintiffs.

We do not consider that there is any force in the objection to the validity of the transactions of some of the intervenors concerning portions of this cotton, founded on the fact that the advances were made on a promise to ship cotton to

Liverpool, and that before the matter was closed, one parcel was substituted for another.    The undoubted credit that *Simpson* had at the time, the short period in which the arrangements were completed, and the *bona fide* delivery to the parties in furtherance of the obligation imposed by the advance, we think, place them on the same footing with regard to those parcels of cotton as the rest of the purchase of cotton stands.

If the rights of the plaintiffs as attaching creditors, as supposed by the counsel, are to be tested by the Act of 1841, which purports to amend the article 3214 of the code, it will be found that this article, as to its meaning and object, has, for years, been acted upon under a judicial interpretation by the Court in the last resort.

The privilege given by this article, says the Supreme Court, was evidently intended to aid the interests of trade and commerce, and promote a liberal spirit as to factors in respect to advances to their principals.    The terms used in it should be understood and construed with reference to mercantile usages, &c.    In giving an opinion as to the meaning of the word *advances* in the article cited, the Court says the word not being in any way qualified, we believe it to be our duty to give it that enlarged sense which best comports with the policy of the provision itself and the general convenience and usages of trade.    *Turpin* v. *Reynolds*, 14 Louisiana Rep. 477.

Under this construction of the article into which the amendatory Act necessarily falls, we think the privilege of the intervenors could be maintained.    But we do not desire to decide this case under that article, but on the ground where the law places it, as we conceive, and on the rights of the parties as they are presented by the evidence.

The fact of the possession of the cotton by *Simpson*, under the sale from the plaintiffs, can hardly be seriously contested under the statement of facts on which the argument of their counsel is based.    But, it is contended that two of the intervenors, *Prehn*, *Clegg & Co.*, and *Davenne*, had parted with the possession of the cotton on which they had made advances, and thereby rendered it liable to the plaintiffs' attachment.    It is conceded that these parties had, prior to the attachments, received from *Simpson*, bills of lading for the cotton claimed by them, and it seems, that these parties pledged the bills of lading to the house of *Dennistoun & Co.* and the *Canal Bank*, to secure certain bills of exchange drawn by them ; the bills of lading to be returned on satisfactory acceptance of the bills of exchange.    The seizure of the cotton was made under the writ of sequestration two days after this transfer of the bills of lading, and the garnishment was served at the same time, being two days after the parties had parted with the possession of the cotton in favor of *Dennistoun* and the *Canal Bank*.

In relation to this objection to the possession of the intervenors, we only think it material to observe, that this mode of transferring bills of lading as a security for the acceptance of bills drawn on the shipments, is not unusual in this market, and we find nothing in the evidence which authorizes us to believe that the transfer of the bills to the *Dennistouns*, or the *Canal Bank*, was of a tortuous character, in any sense—that it was done without the consent of *Simpson*, or that his bills of lading were used in any manner in which he could object to in the usual course of business in the cotton trade.

The rights of the intervenors as affected by the plaintiffs' garnishment, are not all of them exclusively dependent on the same facts, but we consider them all beyond its reach, and for the sake of argument, will assume that they are standing in a similar relation towards the plaintiff.

HILL, MCLEAN & CO. *v.* SIMPSON.

At the time of the service of the garnishment all the cotton was on shipboard except ninety-two bales, for which bills of lading had been endorsed and delivered by *Simpson* to the intervenors. The shipment was completed, the bills of lading negotiated, and the property was entirely beyond the control of its owner.

We know of no case in which this Court has sanctioned the right of an attaching creditor to break up a shipment under these circumstances, and destroy all rights dependent on and created by the bill of lading. We understand the rule to be that, when the owner has parted with his control over it, and cannot change its destination, his creditors cannot attach; but, whenever the owner can sell and deliver, the creditor may seize. *Oliver* v. *Lake,* 3d Annual Rep., 78. *Blackly* v. *Matlock,* 3d Annual Rep. 375. *Hopp* v. *Glover,* 15 Louisiana Rep., 464. *Urie* v *Stevenson,* 2d Robinson, 252. *Taylor* v. *Whittemore,* id. 100; 5th Robinson Rep. 266. *Armer* v. *Cockburn,* 4 Martin, N. S. 668.

Provision having been made in the judgment appealed from for any ultimate claims on the proceeds of the shipments, which the plaintiffs may substantiate, there is no ground for any change in the judgment. ·

The judgment of the District Court is, therefore, affirmed with costs.